| | | |
|---|---|---|
| ANDREW J. ERVIN | * | IN THE |
| 12722 Manor Road | | CIRCUIT COURT |
| Glen Arm, Maryland 21057 | * | FOR BALTIMORE CITY |
| Plaintiff | * | |
| | * | |
| v. | * | Case No.: |
| | * | |
| JP MORGAN CHASE BANK NA | * | |
| Serve: Resident Agent | | |
| THE CORPORATION TRUST INCORPORATED | * | |
| 351 WEST CAMDEN STREET | | |
| BALTIMORE, MD 21201 | * | |
| Defendant | * | |

\*    \*    \*    \*    \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Andrew J. Ervin, by his attorney, Scott C. Borison, files this Complaint, and in support thereof states the following:

1. The plaintiff, Andrew J. Ervin, is a Maryland resident and consumer.

2. Defendant, JP Morgan Chase Bank NA ("Chase") is a Federal Bank engaged in the business of servicing and holding mortgage loans in the State of Maryland and nationwide.

## I. FACTUAL ALLEGATIONS RELATING TO DEFENDANT'S IMPROPER AND UNLAWFUL ACTS

3. On March 21, 2007 the Plaintiff entered into a loan secured by a mortgage against his residence at 12722 Manor Road, Glen Arm, Maryland 21057 with Washington Mutual Bank. ("Mortgage Loan")

4. The relationship with the Defendant Chase when Plaintiff's Mortgage Loan was assigned to JP Chase Bank NA.

1

5.    On July 1, 2009 the Plaintiff and Chase entered into a loan modification agreement of his Mortgage Loan after 7 previous attempts with Chase loosing paper work and requesting re-submissions. The stress caused Plaintiff to seek help.

6.    The relationship between Plaintiff and Chase soured when on September 3, 2009, despite the July 1, 2009 loan modification agreement, Chase conducted a foreclosure sale of Plaintiff's home and sold the Plaintiff's home.   Plaintiff contacted on Chase on multiple occasions and was told no sale occurred.

7.    After the sale, Plaintiff began receiving conflicting phone calls about the sale of his home from Chase's agents.   At this point, due to stress and an inability to function properly due to the prescribed anti-depressants and anti-anxiety medication, Plaintiff appointed his father as legal power of attorney to deal with Chase but Chase never honored this request.

8.    From the time Plaintiff signed the loan modification, until January 2010, all payments were made on time.   Despite this, Plaintiff received a letter demanding that he vacate the property by February 10 2010 or the Sheriff would remove his property.

9.    After recognizing that the foreclosure sale was done improperly, on February 25, 2010, Chase's Substitute Trustees filed a Petition to withdraw report of sale. The petition stated the grounds were "that prior to the sale, without the knowledge of the substitute trustees, the debtors entered into a Loss Mitigation Program".

10.   In addition Chase began inaccurately reporting that the Plaintiff's home was sold at foreclosure sale to credit reporting agencies.   Upon information and belief, this inaccurate reporting continued.

11.   On June 7, 2010, Plaintiff sent a letter by certified mail to the Defendant requesting that all future communications with him be done in writing.

13.   The June 7, 2010 was received by the Defendant Chase on June 9, 2010.

14.   Defendant, Chase, after receipt of the request to stop all phone contact, made 86 phone calls to the Plaintiff at home and work, for which he was reprimanded.

15.   As a result of Chase's actions, Plaintiff was forced to file a lawsuit against Chase.

16.   On September 21, 2010, Ervin filed his case, Case No. 03-C-10-011259, before the Circuit Court for Baltimore County, Maryland. ("First Suit")

17.   Chase answered the case.

18.   The case was set for a jury trial on October 4, 2012.

19.   During the course of that case, the parties participated in settlement discussions before the Court.

20.   As a partial result of the settlement discussions, the parties entered into a Loan Modification Agreement effective August 1, 2012 (LMA). See Exhibit 1. Plaintiff singed the LMA on June 26, 2012. Chase signed the LMA on July 11, 2012. The terms of the LMA provided, inter alia, for a new initial monthly payment of $857.01 for principal and interest due under the loan beginning on August 1, 2012. Additionally, based on the Defendant's written representations in the LMA as to the amount necessary for escrow items, consisting of taxes and insurance, was set at $814.08 per month. The LMA further provided that the "[t]he escrow payments may be adjusted periodically in accordance with applicable law..."

21.   The only agreement reached regarding any part of Plaintiff's First Suit was in regards to the terms of his loan. There were no other agreements consummated relating to Plaintiff's claims in the lawsuit.

21.   When Plaintiff questioned the escrow amount, Chase made additional representations that the escrow claimed was the amount due under his loan. Plaintiff questioned the amount because he knew that the amount due for taxes and insurance on his home when calculated on a monthly basis were substantially less than the amount represented to be due by Chase in the LMA.

22.   The LMA provided a Modification Effective Date of August 1, 2012. See Exhibit 1, ¶ 3. The LMA further provided at ¶ 3.B that

> The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, **escrow advances** and other costs, but excluding unpaid late charges, collectively "Unpaid Amounts")
>
> (Emphasis added)

23.   The date after the Defendant Chase signed this agreement, which stated that the modified principal balance included all escrow advances until August 1, 2012, Chase generated a written statement dated July 12, 2012, advising the Plaintiff that he had an escrow shortage of $5,636.80. See Exhibit 2.

24.   Either the written representation as to what was included in the modified principal balance in the LMA or the July 12, 2012 statement that there was a $5,636.80 escrow shortage as of July 12, 2012 was false. These were statements made by the Defendant Chase in connection with a mortgage loan.

25.   The July 12, 2012 statement advised Plaintiff that his monthly payment would increase from $1,671.13 (this amount was a few cents higher than the $1,671.09 provided in the LMA) would be increased to $1,746.15 per month. See Exhibit 2.

26.  The written representation by Chase in the July 12, 2012 statement that the monthly payment due on his mortgage was $1,746.15 was false.

27.  The Plaintiff began making the monthly payment of $1,671.09, consisting of principal, interests, taxes and insurance, represented by Chase to be the amount due under his mortgage loan for these specific items.

28.  Plaintiff has timely made the payment of $1,671.09 each and every month since he entered into the LMA until March, 2013 when Chase acknowledged a payment reduction to $1143 because his escrow payment was substantially less than Chase had previously represented it to be.  Despite adjusting the payment to the correct amount, Chase falsely represented that Plaintiff owed late charges and was behind on his mortgage. Any late fees or alleged unpaid payments were a result of Chase wrongfully demanding a payment well in excess of the amounts necessary for his principal, interest and escrow items.

29.  Despite Plaintiff's fully performing his obligations by paying the monthly payment, Defendant has sent the Plaintiff various notices that contained false statements.

30.  By a statement dated December 31, 2012, Chase advised that the Plaintiff had an escrow surplus of $3,006.19 and that he would receive a refund of this escrow surplus within 20 days.

31.  Plaintiff did not receive the escrow in the time frame promised by Chase. The written statement that he would receive a refund within 20 days was false.

32.  Instead of sending the Plaintiff the escrow refund, Chase continued to falsely claim that he was behind on payments and that he owed late charges on the Mortgage Loan.

33.   On February 11, 2013, Chase sent the Plaintiff a Notice of Intent to Foreclose on the Mortgage Loan.

34.   Chase made several written representations in the Notice Of intent to Foreclose including:

  a. That Plaintiff defaulted on January 2, 2013;

  b. That Plaintiff owed $3,492.30 in past due payments;

  c. That Plaintiff was 41 days past due and is in default;

  d. That the amount held in suspense for the Mortgage Loan was $1,445.47

  e. That the Plaintiff owed late fees of $171.40

35.   Each statement by chase set forth in the preceding paragraph was made in connection with Plaintiff's Mortgage Loan and was false.

36.   Plaintiff has suffered emotional distress by the repeated false claims by Chase and demands for amounts that it was not legally entitled to collect from Plaintiff under the LMA.

37.   The Plaintiff has suffered physical manifestations resulting from the distress inflicted on him by Chase. These include sleeplessness, irritability, social withdrawal and an inability to enjoy his family and home in peace and solitude. He has experienced anxiety, panic attacks, migraine headaches, depression, a loss of focus and missed important time with his young son.  Plaintiff has incurred medical expenses for treatment associated with the impact of Chase's false statements. Each month Chase sends statements which falsely claim that he is behind on his Mortgage Loan and that he has failed to timely pay his obligation under the LMA.

38.   Chase knew that it had entered into a LMA with the Plaintiff.

39. Chase knew that the statements it made, described herein, were false when made.

40. Chase made the false statements for the purpose of injuring Plaintiff.

41. Chase did not have any business purpose in making false statements to the Plaintiff other than to claim late fees from the Plaintiff.

42. Chase acted with knowledge when it demanded payments from the Plaintiff in excess of amounts that he legally owed beginning with the demand for an escrow payment of $814.08.

43. Only after repeated complaints by counsel has Chase adjusted the escrow amount to the actual amounts due. Chase currently acknowledges that the monthly escrow payment due form Plaintiff is no more than $285.60 per month.

44. Plaintiff has incurred costs and expenses in disputing the wrongful amounts claimed by Chase.

### COUNT I

### *Violation of the Maryland Consumer Debt Collection Act ("MCDCA")*

45. Plaintiff incorporates the foregoing allegations.

46. The Defendant's action violate the Maryland Debt Collection Practices Act, § 14-201 et seq. of the Maryland Commercial Law Article. .

47. The Defendant has disclosed information which affects the Plaintiff's credit reputation with knowledge that it is false.

48. The Defendant has claimed, attempted or threaten to enforce a right with knowledge that the right does not exist.

49. The Defendant's actions have caused the Plaintiff mental anguish.

50.   The Defendant's actions have damaged the Plaintiff.

## COUNT II

### *Violation of the Maryland Consumer Protection Act ("MCPA")*

51.   The Plaintiff incorporates the forgoing paragraphs.

52.   The Defendant's acts constitute and unfair or deceptive trade practice under Maryland law.

53.   The Plaintiff has been damaged by the Defendant's actions.

54.   The Plaintiff is entitled to relief under the Maryland Consumer Protection Act.

## COUNT III

### Violation of the Maryland Mortgage Fraud Protection Act ("MMFPA")

55.   The Bolthouses reiterate and incorporate every allegation above as if set forth herein in full and add:

56.   The Maryland Mortgage Fraud Protection Act, Md. Ann. Code, Real Prop. § 7-401 MD. REAL PROP., *et seq*. ("MMFPA") governs the relationship between the Defendant and Plaintiffs.

57.   MD ANN. CODE., REAL PROP. § 7-401 (c) provides: "Homeowner" means a record owner of residential real property. The Plaintiffs are record owners of the residential property in question and therefore are Homeowners.

58.   MD ANN. CODE., REAL PROP. § 7-401 (e) provides "Mortgage lending process...includes [t]he...servicing...of a mortgage loan."

59.   MD ANN. CODE., FINANCIAL INSTITUTIONS CODE. § 11-501 (k)(1) provides: "Mortgage loan" means any loan or other extension of credit that is: (i) Secured, in whole or

in part, by any interest in residential real property in Maryland; and (ii) If for personal, household or family purposes, in any amount."

60. The MMFPA works to protect the interests of all parties to mortgage issues in Maryland from misstatements, misrepresentations and omissions; in this instance the MMFPA works to protect borrowers like Plaintiff from mortgage companies like the Defendant and ensure a level, fair playing field between all borrowers and professionals.

61. Plaintiff is a homeowner in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the servicing of their residential mortgage loans as it relates to a foreclosure action or threat of foreclosure which is an attempt to collect a certain sum on the mortgage transaction.

62. MD ANN. CODE., REAL PROP. § 7-401 (d) provides:

"Mortgage fraud" means any action by a person made with the intent to defraud that involves:

1. Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent that the misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;

2. Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

3. Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1) or (2) of this section;

4. Conspiring to violate any provisions of item of (1), (2) or (3) of this section...

63.   The Defendant has committed Mortgage Fraud by:

  i.   Knowingly making, as described herein, deliberate misstatements, misrepresentations and omissions during the mortgage lending process, including claiming amounts due for escrow that were false, with the intent that the misstatements, misrepresentations and omission be relied on by the Plaintiff and the general public;

  ii.   Knowingly using or facilitating, as described herein, the use of any deliberate misstatements, misrepresentations, and omissions during the mortgage lending process, including the state court foreclosure action it commenced and carried out, the amounts claimed for escrow, the promise of a return of an escrow surplus within 20 days, the false representations in the Notice of Intent to Foreclose with the intent that the misstatements, misrepresentations, and omissions be relied on by the Plaintiff.

64.   Plaintiff has been damaged by the Defendant's deliberate misstatements, misrepresentations, and omissions during the mortgage lending process as stated herein including ¶¶ 10, 21, 23, 24, 25, 26, 28, 29, 30, 31, 32 and 34 above.

65.   MD ANN. CODE., REAL PROP. CODE. § 7-401 (g) provides:

  Pattern of mortgage fraud means two or more incidents of mortgage fraud that:

  • Involve two or more residential real properties; and

10

- Have similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics.

66.   Upon information and belief the Defendant has engaged in a Pattern of Mortgage Fraud by committing similar acts against two or more Maryland residential properties with similar intents, results and methods of commission as that which was committed by Defendant.  This belief is based upon other matters pending in this and other courts involving Chase.

Wherefore, the Plaintiff prays for judgment in his favor for the following relief:

a. An amount to be determined by the jury for compensatory damages in an amount in excess of $75,000;

b. An award of costs, including attorney's fee.

c. Such and other further relief the nature of the Plaintiff's cause may require.

Respectfully Submitted,

Scott C. Borison, Esq.
Legg Law Firm, LLC
5500 Buckeystown Pike
Frederick, Maryland 21703
(301) 620-1016
Fax: (301) 620-1018

*Attorney for Plaintiff*

REQUEST FOR TRIAL BY JURY
Plaintiff requests a trial by jury of any claims that may be determined by a jury.

_____
Scott C. Borison

11