## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern District)

| | | |
|---|---|---|
| ANDREW J. ERVIN, | * | |
| *Plaintiff*, | * | |
| v. | * | Case No. 13-cv-02080-GLR |
| JPMORGAN CHASE BANK, N.A., | * | |
| *Defendant*. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## DEFENDANT JPMORGAN CHASE BANK, N.A.'S
## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant JPMorgan Chase Bank, N.A., ("Chase"), by and through its undersigned counsel, submits this memorandum in support of its Motion for Summary Judgment, and for its reasons states the following:

### I.        Introduction

In March 2007, Plaintiff Andrew J. Ervin ("Plaintiff") refinanced the mortgage on his residence at 12722 Manor Road, Glen Arm, Maryland by borrowing $380,000 from GSF Mortgage Corporation and securing the debt with a note and deed of trust. Thereafter, Plaintiff defaulted on the loan and Chase became the holder of the loan. Effective August 1, 2012, the parties entered into a loan modification agreement that lowered Plaintiff's interest rate and monthly payment. On July 11, 2012, Chase issued a new escrow analysis to Plaintiff informing him that his monthly payment would increase by about $74 per month, effective as of October 1, 2012. Plaintiff disagreed with the increase and refused to pay it. Each month from October 1, 2012 to February 1, 2013, Plaintiff tendered to Chase a partial payment, one that was $74 less than was due. As a consequence, Plaintiff was delinquent during this period and incurred late

fees. During this period, Chase handled of all Plaintiff's monthly payments in a manner consistent with the terms of the loan as modified on August 1, 2012. There is no support in the record for Plaintiff's claims that his loan modification agreement, monthly statements, and escrow statements contained false statements.  What the documents in the record do disclose, however, is that Plaintiff's monthly mortgage payment was reduced by Chase over time as follows:

| | |
|---|---|
| Monthly payment under the March 2007 note: | $3,184.26 |
| Monthly payment under the August 2012 modification: | $1,746.16 |
| Monthly payment as modified in March 2013: | $1,142.61 |

This 64% reduction in Plaintiff's mortgage payment occurred months before he filed the instant lawsuit.

The Complaint alleges three counts: Count I (Violation of the Maryland Consumer Debt Collection Act ("MCDCA")); Count II (Violation of the Maryland Consumer Protection Act ("MCPA")); and Count III (Violation of the Maryland Mortgage Fraud Protection Act ("MMFPA")). For the reasons set forth herein, judgment on all counts should be entered in favor of Chase.

## II.    Undisputed Facts

On March 21, 2007, Plaintiff borrowed $380,000.00 from GSF (the "Loan"), and evidenced the Loan by executing a promissory note (the "Note"). A copy of the Note is attached as Exhibit A.[1] The Loan is secured by a deed of trust on the property located at 12722 Manor Road, Glen Arm, Maryland 21057 (the "Property"), which was recorded in the Land Records of Baltimore County on April 4, 2007, at Liber 25444, Folio 162 (the "DOT"). A copy of the DOT is attached as Exhibit B.[2]  Also on March 21, 2007, in

---

[1] Plaintiff produced a copy of the Note as pages 148 – 150 of Plaintiff's Document Production and also acknowledged on page 16 of the Deposition Transcript (Ex. U) that he signed the Note.

[2] Plaintiff acknowledged on page 16 of the Deposition Transcript (Ex. U) that he signed the DOT.

conjunction with the closing of the Loan, Plaintiff signed a number of documents including an Initial

Escrow Account Disclosure Statement (the "Escrow Disclosure"),[3] a First Payment Letter (the "Payment

Letter"),[4] and a Private Mortgage Insurance Disclosure (the "PMI Disclosure").[5] Copies of the Escrow

Disclosure, Payment Letter, and PMI Disclosure are attached as Exhibits C, D, and E, respectively, and

establish that Plaintiff agreed to pay PMI as a portion of his monthly Loan payment.

On June 17, 2012, Chase sent Plaintiff a letter offering to modify the Loan (the "Letter").  A copy

of the Letter is attached as Exhibit F.[6]  The Letter transmitted to Plaintiff a Home Affordable Modification

Agreement setting forth the terms and conditions of the proffered loan modification (which included

lowering the amount of Plaintiff's monthly mortgage payment) (the "LMA").  A copy of the LMA is

attached as Exhibit G.[7]  Paragraph 3 of the LMA: (1) establishes an "Interest Bearing Principal Balance"

of $283,003.09, and provides that the first monthly payment under the LMA fell due on August 1, 2012;

(2) sets an "Estimated Monthly Escrow Payment" of $814.08, and further says that "[t]he escrow payments

may be adjusted periodically in accordance with applicable law and therefore my total monthly payment

may change accordingly"; and (3) establishes August 1, 2012, as the effective date of the loan modification

and states that the Loan "will automatically become modified" on August 1, 2012, if Plaintiff's

---

[3] Plaintiff acknowledged on page 19 of the Deposition Transcript (Ex. U) that he signed the Escrow Disclosure at the Loan closing on March 21, 2007.

[4] Plaintiff acknowledged on page 18 of the Deposition Transcript (Ex. U) that he signed the First Payment Letter at the Loan closing on March 21, 2007.

[5] Plaintiff acknowledged on page 19 of the Deposition Transcript (Ex. U) that he signed the PMI Disclosure at the Loan closing on March 21, 2007.

[6] Plaintiff acknowledged on page 40 of the Deposition Transcript (Ex. U) that he received the Letter.

[7] Plaintiff attached a copy of the LMA to the Complaint as Exhibit 1.

representations and covenants in Section 1 of the LMA continue to be true and if all preconditions to the modification set forth in Section 2 of the LMA have been met. Ex. G.  In Paragraph 2(B) of the LMA, Plaintiff states that, "I understand that the Loan Documents will not be modified unless and until . . . (ii) the Modification Effective Date (as defined in Section 3) has occurred." Ex. G. On June 27, 2012, Plaintiff signed the LMA.  Compl., Ex. 1.

By its Annual Escrow Statement dated July 11, 2012 (the "July 2012 Annual Escrow Statement"), Chase informed Plaintiff that the Loan had an escrow account shortage of $5,636.80, and that, consequently, Plaintiff's new monthly payment would increase from $1,671.13 to $1,746.15, effective October 1, 2012. A copy of the July 2012 Annual Escrow Statement is attached as Exhibit H.[8] The figures stated in the July 2012 Annual Escrow Statement were correct when generated because the July 11, 2012 Annual Escrow Statement was prepared on July 11, 2012, twenty-two (22) days prior to the August 1, 2012 effective date of the LMA. Exs. G and H.  On July 11, 2012, Chase applied a payment received from Plaintiff in the amount of $1,671.09 (the "August 1, 2012 Payment"). A copy of the payment history (the "Payment History") reflecting the August 1, 2012 Payment is attached as Exhibit I.[9]  Chase applied the August 1, 2012 Payment as Plaintiff's payment due under the LMA on August 1, 2012, with $385.34 to principal, $471.67 to interest, and $814.08 to escrow. Ex. I.  On August 3, 2012, Chase applied a payment received from Plaintiff on August 2, 2012 in the amount $1,670.98 (the "September 1, 2012 Payment"). Ex. I. Chase applied the September 1, 2012 Payment as Plaintiff's payment due under the LMA on September 1, 2012, with $385.98 to principal, $471.03 to interest, and $813.97 to escrow. Ex. I.

---

[8] Plaintiff acknowledged on page 50 of the Deposition Transcript (Ex. U) that the July 11, 2012 Annual Escrow Statement was prepared in relation to his Loan account.

[9] Plaintiff produced a copy of the Payment History as pages 160 – 162 of Plaintiff's Document Production.

By its Mortgage Loan Statement dated August 6, 2012, Chase reported to Plaintiff the status of his Loan, as modified by the LMA (the "August 6, 2012 Statement"). A copy of the August 6, 2012 Statement is attached as Exhibit J.[10] Although a starting Interest Bearing Principal Balance of $283,003.09 was expressed in paragraph 3(C) of the LMA, the Principal Balance stated in the upper right corner of the August 6, 2012 Statement was a lesser amount, $282,231.77, demonstrating that Chase's system had received and properly applied Plaintiff's first two monthly payments – the August 1, 2012 Payment and the September 1, 2012 Payment – and reduced the outstanding principal balance on the Loan accordingly.[11] Ex. J. The August 6, 2012 Statement stated in two places that Plaintiff's next payment under the LMA fell due on October 1, 2012. Ex. J. This is because by August 6, 2012, Plaintiff's August and September payments due under the LMA had been made earlier than was required. Ex. J. The August 6, 2012 Statement stated in four places that Plaintiff's next payment under the LMA, due on October 1, 2012, would be for $1,746.15, the amount that had been set by the July 2012 Annual Escrow Statement. Exs. H and J.

On September 17, 2012, Plaintiff tendered his next monthly payment under the LMA in the amount of $1,670.98 (the "September 17, 2012 Payment"). Ex. I. By its Mortgage Loan Statement dated September 26, 2012, Chase reported to Plaintiff the status of his Loan (the "September 26, 2012 Statement"). A copy of the September 26, 2012 Statement is attached as Exhibit K.[12] The September 17,

---

[10] Plaintiff acknowledged on page 55 of the Deposition Transcript (Ex. U) that the August 6, 2012 Statement was the first Mortgage Loan Statement issued to Plaintiff after the LMA became effective.

[11] $283,003.09 - $385.34 (August 1, 2012 principal payment) - $385.98 (September 1, 2012 principal payment) = $282,231.77.

[12] Plaintiff acknowledged on pages 66 – 67 of the Deposition Transcript (Ex. U) that he received the September 26, 2012 Statement.

2012 Payment was made prior to the October 1, 2012 due date for the payment, but it was a partial payment, given that the amount was $1,670.98, not $1,746.15. Ex. K. The September 26, 2012 Statement informed Plaintiff that his September 17, 2012 Payment had been applied entirely to principal and reports a principal balance for the Loan of $280,560.79. Ex. K.  The September 26, 2012 Statement correctly states in two places that Plaintiff's next payment was due on October 1, 2012, in the amount of $1,746.15, the amount that had been set by the July 2012 Annual Escrow Statement, and which had been reported to Plaintiff in the August 6, 2012 Statement. Exs. J and K.  Because the September 17, 2012 Payment was a partial payment that had been applied entirely to principal pursuant to the DOT, Plaintiff's October 1, 2012 payment of $1,746.15 remained due and owing. Ex. B, Section 2.

By its Mortgage Loan Statement dated October 22, 2012, Chase reported to Plaintiff the status of his Loan (the "October 22, 2012 Statement"). A copy of the October 22, 2012 Statement is attached as Exhibit L.[13] The October 22, 2012 Statement reflects that on October 16, 2012, Plaintiff tendered his next monthly payment in the amount of $1,670.98 (the "October 16, 2012 Payment"). Ex. L. The October 16, 2012 Payment was made after the October 1, 2012 due date and it was a partial payment, given that the amount was $1,670.98, not $1,746.15. Ex. L.  Chase did not apply the October 16, 2012 Payment, but placed it in suspense as unapplied funds.[14] Ex. L. The October 22, 2012 Statement states that Plaintiff's payment due on October 1, 2012 remains unpaid (because the October 16, 2012 Payment was a partial payment and had been placed in suspense), and that a late fee of $42.85 had been applied. Ex. L.

---

[13] Plaintiff acknowledged on pages 70 – 71 of the Deposition Transcript (Ex. U) that he received the October 22, 2012 Statement.

[14] Chase applied all of Plaintiff's post-October 2012 partial payments to suspense, as authorized under the DOT. Ex. B, Section 1.

On November 8, 2012, Plaintiff submitted a qualified written request under Section 2605 of RESPA to Chase inquiring as to the basis for Chase's determination of the amount of his monthly mortgage payment (the "QWR"). A copy of the QWR is attached as <u>Exhibit M</u>.[15]  By its Mortgage Loan Statement dated November 14, 2012, Chase reported to Plaintiff the status of his Loan (the "November 14, 2012 Statement"). A copy of the November 14, 2012 Statement is attached as <u>Exhibit N</u>.[16]  The November 14, 2012 Statement reflects that On November 14, 2012, Plaintiff tendered his next monthly payment in the amount of $1,670.98 (the "November 14, 2012 Payment"). Ex. N.  The November 14, 2012 Payment was a partial payment, given that the amount of the payment was $1,670.98, not $1,746.15. Ex. N. Chase did not apply the November 14, 2012 Payment, but placed it in suspense as unapplied funds, adding it to the $1,670.98 from the October 16, 2012 Payment that had been placed in suspense the prior month. Ex. N.  From the total of $3,341.96 then in suspense, Chase drew out $1,746.15 and applied it in payment of the past due payment for October 1, 2012, leaving an unapplied funds balance in the account of $1,595.81. Ex. N. The November 14, 2012 Statement states that Ervin's payment due on November 1, 2012 under the LMA remains unpaid (because the November 14, 2012 Payment was a partial payment and had been placed in suspense), and that a late fee of $42.85 had been applied.  Ex. N.  The November 14, 2012 Statement reflects that Chase had made a $1,746.15 disbursement out of suspense to pay Ervin's delinquent October 1, 2012 payment, leaving an Unapplied Funds account balance of $1,595.81. Ex. N.

---

[15] Plaintiff acknowledged on page 83 of the Deposition Transcript (Ex. U) that QWR was submitted to Chase on his behalf after receiving the LMA.

[16] Plaintiff acknowledged on page 74 of the Deposition Transcript (Ex. U) that he received the November 14, 2012 Statement.

By its Mortgage Loan Statement dated December 13, 2012, Chase reported to Plaintiff the status of his Loan (the "December 13, 2012 Statement"). A copy of the December 13, 2012 Statement is attached as Exhibit O.  The December 13, 2012 Statement reflects that on December 13, 2012, Plaintiff tendered his next monthly payment in the amount of $1,670.98 (the "December 13, 2012 Payment").  Ex. O. The December 13, 2012 Statement expresses that Plaintiff's payment due on December 1, 2012, under the LMA remains unpaid (because the December 13, 2012 Payment was a partial payment and had been placed in suspense).  Ex. O.  The December 13, 2012 Statement correctly states that Ervin had an Unapplied Funds account balance of $1,520.64. Ex. O.

By its "Escrow: Taxes and Insurance Statement" dated December 31, 2012 (the "December 2012 Escrow Statement"), Chase informed Plaintiff that the Loan had an escrow surplus of $3,006.19, and that, consequently, his new monthly payment would decrease from $1,746.15 to $1,142.61, effective on March 1, 2013. A copy of the December 2012 Escrow Statement is attached as Exhibit P.[17]  The December 31, 2012 Escrow Statement reflects that the reduction in Plaintiff's monthly escrow payment was largely attributable to Chase's decision to cease charging him $516.17 per month for PMI.  Ex. P.  Page 2 of 4 of the December 31, 2012 Escrow Statement reflects, for example, "Withdrawal – PMI $516.17." Ex. P.  The December 31, 2012 Escrow Statement also informs Plaintiff that his escrow surplus of $3,006.19 would be mailed to him, rather than being applied to reduce the Total Payment Due reflected on the December 13, 2012 Statement.  Ex. P.  On or about March 20, 2013, Chase disbursed the escrow surplus of $3,006.19

---

[17] Plaintiff acknowledged on page 78 of the Deposition Transcript (Ex. U) that he received the December 31, 2012 Escrow Statement.

to Ervin in the form of a check (the "Escrow Surplus Disbursement"). A copy of the Escrow Surplus Disbursement is attached as <u>Exhibit Q</u>.[18]

By its correspondence dated February 11, 2013, Chase gave notice to Ervin of its intent to foreclose the Loan (the "Notice").[19]   Page 6 of the Notice itemizes the amount by which the Loan is past due and contains the statement that, "Amount Held in Suspense $1,445.47." The amount held in suspense refers to unapplied funds held in the Loan account and is a sum separate and distinct from "escrowed funds." "Escrowed funds" is a term that relates to sums held by the mortgagee to pay the borrower's property taxes, property insurance, and private mortgage insurance.

All of the monthly payments made by Plaintiff on the Loan during the period July 1, 2012 to December 31, 2012 were properly applied by Chase in repayment of the Loan in accordance with the terms of the Note, DOT, and LMA.  All of the delinquent amounts and late fees reflected in the mortgage loan statements between August 6, 2012 and February 13, 2013 stem from Plaintiff's failure to pay the sum of $1,746.15 as his monthly mortgage amount beginning on October 1, 2012 and through March 1, 2013, and to instead make a partial payment each month in the amount of $1,670.98.

### III.   Standard of Review

#### A.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material

---

[18] Plaintiff acknowledged on pages 106 – 107 of the Deposition Transcript (Ex. U) that he received the Escrow Surplus Disbursement.

[19] Plaintiff produced a copy of the Notice as part of Plaintiff's Document Production.

fact is one that "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

In a Motion for Summary Judgment, the moving party may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catreet*, 477 U.S. 317, 325 (1986).  The court may rely only on facts supported in the record, not simply assertions in the pleadings, in order to fulfill "its affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).  (citing *Celotex*, 477 U.S. at 323-24).  Furthermore, Plaintiff may not create a genuine issue of material fact by "rest[ing] upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  Finally, Plaintiff "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986).  When considering a Motion for Summary Judgment, the Court must view both the facts and reasonable inferences that may be drawn from the facts in the light most favorable to the party opposing the motion.

## IV.   Argument

### A.   Count I: Violation of the Maryland Consumer Debt Collection Act ("MCDCA")

Plaintiff alleges in Count I that: (1) Chase's "action[s] violate the [MCDCA]"; (2) Chase "has disclosed information which affects the Plaintiff's credit reputation with knowledge that it is false"; (3) Chase "has claimed, attempted or threatened to enforce a right with knowledge that the right does not exist"; (4) Chase's "actions have caused the Plaintiff mental anguish"; and (5) Chase's "actions have damaged the Plaintiff." Compl., ¶¶ 45 – 50. The specific acts alleged by Plaintiff in the Complaint that

constitute violations of the MCDCA include Chase: (i) stating in the July 2012 Annual Escrow Analysis that there was a $5,636.80 escrow shortage as of July 12, 2012 when the LMA stated that the modified principal balance of the Note would include all amounts and arrearages past due as of the Modification Effective Date (August 1, 2012) (Compl., ¶¶ 20, 21 – 24); (ii) stating in the July 2012 Annual Escrow Analysis that Plaintiff's monthly payment due was $1,746.15 when the LMA stated that Plaintiff's monthly payment was $1,671.09 (Compl., ¶¶ 25 – 26); (iii) representing that Plaintiff was delinquent on his mortgage payments and owed late charges although Plaintiff had paid $1,671.09 each month under the LMA (Compl., ¶¶ 27 – 34); (iv) misrepresenting the amount of Plaintiff's monthly escrow payment under the LMA (Compl., ¶ 28); and (v) sending Plaintiff the Notice (Compl., ¶ 33).

The MCDCA states, in relevant part, that a collector, in collecting or attempting to collect an alleged debt, may not "[d]isclose or threaten to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false" or "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code, Comm. Law ("CL"), § 14-202.

Here, the record is devoid of any fact showing that Chase acted in violation of the MCDCA. First, as set forth in greater detail in Section IV(B)(i)-(iv), *infra*, the statements contained in the July 2012 Annual Escrow Analysis and monthly statements issued thereafter were accurate, and all delinquencies, defaults, and late charges are attributable to Plaintiff's decision to not pay the full amount owed when due under the terms of the DOT, Note, LMA, and the July 2012 Annual Escrow Analysis. Finally, as set forth in Section IV(B)(iii), *infra*, because Plaintiff defaulted under the terms of the Note and DOT in October 2012, and remained in default through February 11, 2013 (the date on which Plaintiff alleges Chase sent him the Notice), Chase's representation in the Notice that Plaintiff was delinquent and in default under the terms of the Note and DOT was true.

Additionally, Chase, in its Request for Production of Documents No. 13, requested that Plaintiff provide "[a]ll documents upon which [Plaintiff] will rely to establish that Chase 'disclosed information which affects the Plaintiff's credit reputation with knowledge that it is false.'" A copy of the written portion of Plaintiff's Responses to Chase's Requests for Production of Documents (the "RPD") is attached as Exhibit R.  Plaintiff, in response to RPD No. 13, provided a credit report from Equifax (the "Credit Report"). A copy of the Credit Report is attached as Exhibit S.  The Credit Report, however, reflects that the status of the Chase accounts listed as "PAID AS AGREED," and does not reflect that Chase disclosed any information that would negatively affect Plaintiff's reputation for credit worthiness. Ex. S.  Chase, in its Amended Notice of Deposition *Duces Tecum* to Plaintiff, also requested that Plaintiff produce all other documents in support of his claims against Chase (the "Deposition Notice"). A copy of the Deposition Notice is attached as Exhibit T.  Plaintiff, as reflected on page 9 of the Deposition Transcript, failed to produce any documents in response to the Deposition Notice. A copy of the Deposition Transcript is attached as Exhibit U.  Therefore, Plaintiff has failed to produce any facts showing that Chase disclosed any information which negatively affected Plaintiff's credit reputation.

Because Plaintiff has failed to place in the record facts establishing that Chase disclosed or threatened to disclose information which negatively affects the debtor's reputation for credit worthiness with knowledge that the information is false or claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist, summary judgment should be entered against Plaintiffs and in favor of Chase.

**B.**    **Count II: Violation of the Maryland Consumer Protection Act ("MCPA")**

Plaintiff alleges in Count II that: (1) Chase's "acts constitute [] unfair or deceptive trade practice"; (2) "Plaintiff has been damaged by [Chase's] actions"; and (3) "Plaintiff is entitled to relief under the

[MCPA]." The specific acts Plaintiff alleges constitute unfair or deceptive trade practices under the MCPA are set forth in Section I of the Complaint and include: (a) the statement in the July 2012 Annual Escrow Analysis that there was a $5,636.80 escrow shortage as of July 11, 2012, was false because the LMA stated that the modified principal balance of the Note would include all amounts and arrearages past due as of the Modification Effective Date (August 1, 2012) (Compl., ¶¶ 20, 21 – 24); (b) the statement in the July 11, 2012 Annual Escrow Analysis that Plaintiff's monthly payment due was $1,746.15 was false because the LMA stated that Plaintiff's monthly payment was $1,671.09 (Compl., ¶¶ 25 – 26); (c) although Plaintiff paid $1,671.09 each month since entering the LMA, Chase falsely represented that Plaintiff was delinquent on his mortgage payments and owed late charges (Compl., ¶¶ 27 – 34); and (d) Chase misrepresented the amount of Plaintiff's monthly escrow payment under the LMA (Compl., ¶ 28).

i.      **The statement in the July 2012 Annual Escrow Analysis that there was a $5,636.80 escrow shortage as of July 11, 2012 was not false.**

Plaintiff contends in the Complaint that the statement in the July 2012 Annual Escrow Analysis that there was a $5,636.80 escrow shortage as of July 11, 2012, was false because the LMA stated that the modified principal balance of the Note would include all amounts and arrearages past due as of the Modification Effective Date (August 1, 2012) (Compl., ¶¶ 20, 21 – 24). Plaintiff is incorrect.

The July 11, 2012 Annual Escrow Analysis stated that as of July 11, 2012, Plaintiff had an escrow shortage amount of $5,636.80. Ex. H. The LMA, which was executed by Plaintiff on June 27, 2012 and by Chase on July 11, 2012, states that as of the Modification Effective Date of the LMA, the principal balance on the Note would be modified to include all past due amounts, including unpaid escrow advances. Ex. G, Section 3(B). Plaintiff contends that because the LMA stated that the principal balance on the Note would be modified to include all past due amounts, including unpaid escrow advances, and because Chase stated in the Escrow Analysis, also issued July 11, 2012, that Plaintiff had an escrow shortage amount of

$5,636.80, that one of those two statements must be false. Plaintiff is incorrect. Neither statement was false, and Chase was entitled, pursuant to the Real Estate Settlement Procedures Act ("RESPA"), to conduct the July 11, 2012 Annual Escrow Analysis.

The LMA, by its terms, did not become effective until August 1, 2012. Ex. G, Sections 2(A) and 3. Therefore, the existence of a $5,636.80 escrow shortage, as reflected on the July 11, 2012 Annual Escrow Analysis, was accurate as of July 11, 2012, because the LMA (which stated that the principal balance on the Note would be modified as of August 1, 2012, to include all past due amounts, including unpaid escrow advances) had not yet taken effect (that is, on July 11, 2012, the $5,636.80 escrow shortage had not yet been rolled into the principal balance on the Note). Additionally, RESPA and Regulation X provide that if a servicer has established an escrow account for a borrower, the servicer must submit to the borrower not less than once for each 12-month period, an escrow account analysis establishing the borrower's monthly escrow account payments for the next computation year. 12 U.S.C. §§ 2609(c)(2)(A) and (B) and 24 C.F.R. § 3500.17(c)(3).  Regulation X also states that a servicer may conduct an escrow account analysis at any other time during the escrow computation year. 24 C.F.R. § 3500.17(f)(1)(ii).

Here, because Chase completed the July 11, 2012 Annual Escrow Analysis prior to the August 1, 2012 effective date of the LMA, and because Chase's completion of the July 11, 2012 Annual Escrow Analysis was in compliance with Chase's obligations under RESPA and Regulation X, both the LMA, which provided that the principal balance on the Note would be modified on August 1, 2012, to include all past due amounts, including unpaid escrow advances, and the July 11, 2012 Annual Escrow Statement stating that Plaintiff had an escrow shortage amount of $5,636.80, as of July 11, 2012, were accurate. In short, the July 2012 Escrow Analysis was accurate when it was prepared, and the escrow shortage was rolled into principal three weeks later when the LMA became effective.

**ii.      The statement in the July 2012 Annual Escrow Analysis that Plaintiff's monthly payment due was $1,746.15 was not false when made.**

Plaintiff contends that the statement in the July 2012 Annual Escrow Analysis that Plaintiff's monthly payment due was $1,746.15 was false given the fact that the LMA stated that Plaintiff's monthly payment was $1,671.09. Compl., ¶¶ 25 – 26. Plaintiff is incorrect.

The July 2012 Annual Escrow Analysis, issued on July 11, 2012, stated that as of October 1, 2012, Plaintiff's monthly mortgage payment would increase from $1,671.13 (an amount a few cents higher than the $1,671.09 payment provided in the LMA) to $1,746.15. Ex. H.  The July 2012 Annual Escrow Analysis explained that the increased payment was "based on projected amounts to be paid from your Escrow Account, of $795.19 and, if applicable, an amount needed to repay the escrow shortage of $5,636.80." Ex. H.  The July 2012 Annual Escrow Analysis explained that the $5,636.80 escrow shortage could be repaid over 60 months with an additional $93.95 payment added to the monthly payment, for a total monthly payment of $1,746.15. Ex. H. The LMA, which was executed by Plaintiff on June 27, 2012, and by Chase on July 11, 2012, states that as of the Modification Effective Date of the LMA, the monthly mortgage payment would be $1,671.09. Ex. G, Section 3(C).  The LMA also states that the escrow payment amount is an estimate and "may be adjusted periodically in accordance with applicable law and may 'change periodically over the term of [the] Loan.'" Ex. G, Sections 3(C) and 4(C). Plaintiff contends that because the LMA stated that the monthly mortgage payment would be $1,671.09, and because Chase stated in the Escrow Analysis issued July 11, 2012, that Plaintiff's monthly mortgage payment would be $1,746.15, that the $1,746.15 amount in the July 11, 2012 Annual Escrow Analysis was false. Plaintiff is incorrect.

The LMA, by its terms, did not become effective until August 1, 2012. Ex. N, Sections 2(A) and 3. Therefore, as set forth in Section IV(B)(a), *supra*, because the $5,636.80 escrow shortage reflected in the July 11, 2012 Annual Escrow Statement was accurate as of July 11, 2012, and because, as explained

in the July 11, 2012 Annual Escrow Statement, the $1,746.15 payment was calculated taking into consideration the repayment of the $5,636.80 escrow shortage over 60 months at $93.95 per month for a total monthly payment of $1,746.15, the $1,746.15 payment was accurate as of July 11, 2012, because the LMA (which stated that the principal balance on the Note would be modified as of August 1, 2012 to include all past due amounts, including unpaid escrow advances (including the $5,636,80) and that the monthly mortgage payment would be $1,671.09 ) had not yet taken effect.  Additionally, Regulation X provides that "[i]f an escrow account analysis discloses a shortage that is greater than or equal to one month's escrow account payment, then the servicer . . . may require the borrower to repay the shortage in equal monthly payments over at least a 12-month period." 24 C.F.R. § 3500.17(f)(3)(ii).  RESPA also provides that a servicer need not complete and submit a new escrow analysis to a borrower for 12 months following the completion and submission to the borrower of an escrow analysis. 12 U.S.C. § 2609(c)(2)(B).

Here, because Chase completed the July 11, 2012 Annual Escrow Analysis prior to the August 1, 2012 effective date of the LMA, because the repayment of the $5,636.80 escrow shortage over 60 months complies with the Regulation X requirement that borrowers be allowed to repay a shortage over at least a 12-month period, and because RESPA authorized Chase to use the July 11, 2012 Annual Escrow Analysis for 12 months following its completion (thereby entitling Chase to continue to charge $1,746.15 as the monthly payment for 12 months even though the LMA, which took effect August 1, 2012, reflected a lower monthly payment due to the fact that the escrow shortage of $5,636.80 was rolled into the principal amount due under the Note), the statement in the July 11, 2012 Annual Escrow Analysis that Plaintiff's monthly payment due was $1,746.15 was not false when made, and was accurate under RESPA.

### iii. Chase's representation that Plaintiff was delinquent on his mortgage payments and owed late charges was not false.

Plaintiff contends in the Complaint that although he paid $1,671.09 each month after entering the LMA, Chase falsely represented that Plaintiff was delinquent on his mortgage payments and owed late charges. Compl., ¶¶ 27 – 34. Plaintiff is incorrect, and all delinquencies, defaults, and late charges are attributable to Plaintiff's decision to not pay the full monthly amount owed under the terms of the DOT, Note, and the July 11, 2012 Annual Escrow Assessment, effective as of October 1, 2012.[20]

As set forth in Section IV(B)(ii), *supra*, on July 11, 2012, Chase submitted the RESPA compliant July 2012 Annual Escrow Analysis to Plaintiff reflecting a monthly mortgage payment due in the amount of $1,671.13 for the August 1, 2012 and September 1, 2012, and payment due in the amount of $1,746.15 beginning October 1, 2012. Ex. G. On October 16, 2012, Plaintiff made a partial payment of $1,670.98 toward the payment due on October 1, 2012 of $1,746.15. Ex. I. Because the $1,670.98 payment made by Plaintiff was not the full amount due ($1,746.15), Chase did not apply the $1,670.98 payment at that time, placed it into a suspense account, and charged Plaintiff a late fee in the amount of $42.85. Ex. I. Chase was entitled to take these actions pursuant to the terms of the DOT and Note.

The DOT states that Plaintiff agreed to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. [Plaintiff] shall also pay funds for Escrow Items pursuant to Section 3." Ex. B, Section 1. The DOT continues that:

> [Chase] may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but [Chase] is not obligated to apply such payments at the

---

[20] If Plaintiff wished to inquire as to the basis for Chase's determination of the amount of his monthly mortgage payment, Plaintiff's remedy was to submit a QWR. 12 U.S.C. § 2605. As set forth in Section II, *supra*, however, Plaintiff did not submit a QWR to Chase until November 8, 2012 (over three months after the August 1, 2012 effective date of the LMA).

time such payments are accepted. . . . [Chase] may hold such unapplied funds until [Plaintiff] makes payment to bring the Loan current.

Ex. B, Section 1.  Additionally, the Note states that Plaintiff agreed that:

> If [Chase] has not received the ***full amount*** of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to [Chase]. The amount of the charge will be 5.000% of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.
>
> If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
>
> If I am in default, [Chase] may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.

Ex. A, Section 6. (Emphasis added).

Here, as set forth in the July 2012 Annual Escrow Analysis, the monthly mortgage payment due under the Note beginning on October 1, 2012 was $1,746.15. Plaintiff failed to pay the full amount of $1,746.15 by October 15, 2012 (having paid only $1,670.98). Ex. H, Section 1. Because Plaintiff failed to pay the full amount due by October 15, 2012, Chase was authorized under the DOT to accept, but not apply, the $1,670.98 received from Plaintiff and to place the $1,670.98 into a suspense account until Plaintiff made sufficient payment to bring the Loan current. Ex. B.  And because Plaintiff failed to pay the full amount of $1,746.15, Chase was also authorized under the Note to charge Plaintiff a late charge of 5.000% of his overdue payment of interest and/or principal and interest (or $42.85). Ex. A, Section 6.

Finally, as set forth above, because Plaintiff failed to timely make his October 1 payment, Plaintiff defaulted under the terms of the Note. Ex. A, Section 6. Because Plaintiff defaulted under the terms of the Note and DOT in October 2012, and remained in default through at least February 11, 2013 (the date on which Plaintiff alleges in the Complaint that Chase sent him the Notice), Chase's representation in the

Notice that Plaintiff was delinquent and in default under the terms of the Note and DOT was not false. Ex. A, Section 6.

**iv.  Chase did not misrepresent the amount of Plaintiff's monthly escrow payment under the LMA.**

Plaintiff contends in the Complaint that Chase misrepresented the amount of Plaintiff's monthly escrow payment under the LMA. Compl., ¶ 28. Specifically, Plaintiff contends that Chase misrepresented the amount of Plaintiff's escrow payment under the LMA (an amount of $814.08 per month) because Plaintiff did not believe Chase was entitled to impose a private mortgage insurance ("PMI") charge of $516.17 per month as part of the escrow payment. Ex. G; Ex. U, at p. 142. Plaintiff is incorrect.

Pursuant to the terms of the DOT, Plaintiff agreed to pay to Chase when due under the Note funds due for, *inter alia*, "Mortgage Insurance premiums, if any, or any sums payable by [Plaintiff] to [Chase] in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions in Section 10." Ex. B, Section 3(d).  Section 10 of the DOT states:

> If Lender required Mortgage Insurance as a condition of making the Loan, [Plaintiff] shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and [Plaintiff] was required to make separately designated payments toward the premiums for Mortgage Insurance, [Plaintiff] shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to [Plaintiff] of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, [Plaintiff] shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.

Ex. B, Section 10.

As set forth in Section II, *supra*, Plaintiff in the Deposition admitted to the authenticity of the Escrow Disclosure, the Payment Letter, the PMI Disclosure, and the July 2012 Annual Escrow Statement. Moreover, the Escrow Disclosure, Payment Letter, and PMI Disclosure were signed by Plaintiff during

19

the closing of the Loan on March 21, 2007, and each reflects Plaintiff's acknowledgment of his obligation to pay monthly PMI payments in the amount of $516.17.  Exs. C, D, E.  The PMI Disclosure also states that Plaintiff's obligation to pay the monthly PMI payment will not terminate until November 1, 2023, at the earliest. Ex. E.  Additionally, the July 2012 Annual Escrow Statement reflects the continuation of the monthly PMI payment in the amount of $516.17.  Ex. H.

Here, because Plaintiff acknowledges signing at settlement on March 21, 2007, the Escrow Disclosure, Payment Letter, and PMI Disclosure, which evidenced Plaintiff's obligation to make a monthly PMI payment in the amount of $516.17 until at least November 1, 2023, and because the July 11, 2012 Annual Escrow Statement reflects, and Plaintiff acknowledges, that Chase continued to charge Plaintiff a monthly PMI payment in the amount of $516.17 after the LMA took effect on August 1, 2012, the record reflects that Chase did not misrepresent the PMI amount of Plaintiff's monthly escrow payment under the LMA, but instead, continued to charge the PMI payment amount that Plaintiff agreed to pay at closing on March 21, 2007.[21]  Therefore, summary judgment should be entered against Plaintiff and in favor of Chase.

**C.      Count III: Violation of the Maryland Mortgage Fraud Protection Act ("MMFPA")**

Plaintiff alleges in Count III that: (1) Plaintiff is a homeowner as defined by the MMFPA; (2) Chase knowingly made deliberate misstatements, misrepresentations and omissions during the mortgage lending process, including claiming amounts due for escrow that were false, with the intent that the misstatements, misrepresentations and omissions be relied on by Plaintiff and the general public; (3) Chase knowingly used or facilitated the use of deliberate misstatements, misrepresentations, and omissions

---

[21] The LMA also reflects the continuation of the monthly PMI payment. Ex. G, Section 4(O).

during the mortgage lending process, including: (i) conducting a foreclosure sale in September 3, 2009 (Compl., ¶ 6); (ii) sending Plaintiff the Notice (Compl., ¶ 33); (iii) stating in the July 2012 Annual Escrow Analysis that there was a $5,636.80 escrow shortage as of July 11, 2012 when the LMA, which became effective in August 2012, stated that the modified principal balance of the Note would include all amounts and arrearages past due as of the Modification Effective Date (August 1, 2012) (Compl., ¶¶ 20, 21 − 24); (iv) stating in the July 2012 Annual Escrow Analysis that Plaintiff's monthly payment due was $1,746.15 when the LMA stated that Plaintiff's monthly payment was $1,671.09 (Compl., ¶¶ 25 − 26); (v) representing that Plaintiff was delinquent on his mortgage payments and owed late charges although Plaintiff had paid $1,671.09 each month since entering the LMA (Compl., ¶¶ 27 − 34); and (vi) misrepresenting the amount of Plaintiff's monthly escrow payment under the LMA (Compl., ¶ 28); (4) Plaintiff has been damaged by Chase's misstatements, misrepresentations, and omissions; and (5) upon information and belief, Chase has engaged in a pattern of mortgage fraud by committing similar acts against two or more Maryland residential properties with similar intents, results and methods of commission. This belief is based upon other matters pending in this and other courts involving Chase.

The MMFPA, in relevant part, defines "mortgage fraud," which is prohibited by the MMFPA, to include any action by a person made with the intent to defraud that involves:

(1)     Knowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

(2)     Knowingly creating or producing a document for use during the mortgage lending process that contains a deliberate misstatement, misrepresentation, or omission with the intent that the document containing the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process;

(3)    Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

RP, § 7-401(d)(1) – (3).  The MMFPA defines the "mortgage lending process" to mean "the process by which a person seeks or obtains a mortgage loan" and to include: "(i) [t]he solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan;" and "(ii) [t]he notarizing of any document in connection with a mortgage loan." RP, § 7-401(e)(1) – (2). The MMFPA defines a "pattern of mortgage fraud" to mean "two or more incidents of mortgage fraud that: (1) [i]nvolve two or more residential real properties; and (2) [h]ave similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics." RP, § 7-401(g)(1) – (2).

Here, the record is devoid of any fact showing that Chase acted in violation of the MMFPA. First, whatever claims Plaintiff may have had arising out of the foreclosure sale conducted on behalf of Chase on September 3, 2009, in the case *Burson, et al. v. Ervin*, Case No. 03-09-1101315, Circuit Court for Baltimore County,[22] were settled pursuant to the on-the-record settlement agreement (the "Settlement Transcript") in the first case Plaintiff filed against Chase titled *Andrew J. Ervin v. JPMorgan Chase Bank, N.A.*, Case No. 03-C-10-011259, Circuit Court for Baltimore County (the "First Ervin Lawsuit") and in any event, are now time-barred pursuant to Md. Code, Courts and Judicial Proceedings Article, § 5-101, which requires that a civil cause of action be filed within three years of the date it accrues. A copy of the Settlement Transcript and the fax referenced in the Settlement Transcript transmitting a copy of the agreed upon Settlement Agreement to the Judge (the "Fax") are attached as <u>Exhibits V</u> and <u>W</u>.  A copy of the

---

[22] The foreclosure sale was thereafter set aside and the foreclosure case was dismissed on October 26, 2012.

Complaint filed in the First Ervin Lawsuit (the "First Ervin Lawsuit Complaint") is also attached for reference as Exhibit X.  As reflected in the Settlement Transcript and the Fax, Chase and Plaintiff agreed, in settlement of the First Ervin Lawsuit, to dismiss, with prejudice, all claims in the First Ervin Lawsuit Complaint, which included Plaintiff's claims relating to the foreclosure sale conducted on behalf of Chase on September 3, 2009. Exs. V and W.  Because the Plaintiff's potential claims relating to the foreclosure sale conducted on behalf of Chase on September 3, 2009 were settled pursuant to the on the record settlement agreement reflected in the Settlement Transcript and Fax, Plaintiff is barred from asserting this alleged violation again in this case.

Second, as set forth in greater detail in Section IV(B)(i)-(iv), *supra*, the statements contained in the July 2012 Annual Escrow Analysis and monthly statements were accurate when made, and all delinquencies, defaults, and late charges are attributable to Plaintiff's decision to not pay the full amount owed when due under the terms of the DOT, Note, and the July 2012 Annual Escrow Assessment. Further, as set forth in Section IV(B)(iii), *supra*, because Plaintiff defaulted under the terms of the Note and DOT in October 2012, and remained in default through February 11, 2013 (the date on which Plaintiff alleges in the Complaint that Chase sent him a Notice of Intent to Foreclose), Chase's representation in the Notice of Intent to Foreclose that Plaintiff was delinquent and in default under the terms of the Note and DOT was not false.

Finally, the record is devoid of any facts tending to show that Chase engaged in a pattern of mortgage fraud. Plaintiff has failed to enter into the record a specific case in which Chase has allegedly engaged in such behavior or any facts showing that another case involved similar intents, results, accomplices, victims, or methods of commission or was somehow otherwise interrelated by its distinguishing characteristics with the instant case.

Because Plaintiff has failed to introduce into the record facts establishing that Chase acted in violation of the MMFPA, this claim is also subject to the entry of summary judgment against Plaintiff and in favor of Chase.

**V.**     **Conclusion**

For the foregoing reasons, Chase requests that this Court grant its Motion for Summary Judgment and enter judgment in favor of Chase as to all claims asserted in the above-captioned lawsuit.

Respectfully submitted,

By:     _____/s/_____

John S. Simcox, Esquire
Federal Bar No. 02553
jss@simcoxandbarclay.com

By:     _____/s/_____

Chad King, Esquire
Federal Bar No. 16888
cking@simcoxandbarclay.com
Simcox and Barclay, LLP
888 Bestgate Road, Suite 313
Annapolis, MD 21401
Phone: (410) 266-0610
Fax:    (410) 266-0813
*Attorneys for Defendant*
*JPMorgan Chase Bank, N.A.*

**REQUEST FOR HEARING**

Chase respectfully requests a hearing on its Motion for Summary Judgment.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of March, 2014, a copy of Defendant JPMorgan Chase Bank, N.A.'s Memorandum in Support of Motion for Summary Judgment was served via the court's electronic filing system on:

>Scott C. Borison, Esquire
>Legg Law Firm, LLC
>5500 Buckeystown Pike
>Frederick, MD 21703
>>*Counsel for Plaintiff*
>>*Andrew J. Ervin*

>>>_____/s/_____
>>>John S. Simcox